

61 Broadway, 26th Floor, New York, NY 10006
Tel: 212-867-4100  Fax: 212-867-4118
www.fkblaw.com

April 3, 2019

**BY ECF**
Hon. Ronnie Abrams, U.S.D.J.
United States District Court
Southern District of New York
40 Foley Square, Room 2203
New York, NY 10007

      Re:   *CitiBank, N.A. v. Law Offices of Rachel Zamata, LLC*
              Case No. 18-CV-9973 (RA)

Dear Judge Abrams:

    We represent the defendant, Law Office of Rachel Zamata, LLC ("Defendant Zamata Firm"), in the above-referenced action.

    In advance of the initial conference scheduled for April 5, 2019, we write to notify the Court of an action pending in the United States District Court for the Middle District of Tennessee, bearing index 19-CV-00166. The Plaintiff in that matter is The Bar Plan Mutual Insurance Company, and both Plaintiff (CitiBank, N.A.) and Defendant (Defendant Zamata Firm) in the instant matter are defendants in the federal suit in Tennessee. The Complaint is attached to this correspondence. In sum, The Bar Plan (Ms. Zamata's professional liability insurer) is seeking a judicial declaration that it is not obligated to provide insurance coverage for the claims brought by Citibank in this action.

                                      Respectfully,

                              FURMAN KORNFELD & BRENNAN LLP

                              A. Michael Furman

Encl.
cc: Bruce Goodman, Esq. (via ECF)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| THE BAR PLAN MUTUAL INSURANCE COMPANY, | )<br>)<br>) |
| Plaintiff, | ) Case No: |
| v. | )<br>) |
| LAW OFFICE OF RACHEL ZAMATA, LLC | )<br>) |
| and | )<br>) |
| CITIBANK, N.A., | )<br>) |
| Defendants. | ) |

## DECLARATORY JUDGMENT COMPLAINT

COMES NOW, The Bar Plan Mutual Insurance Company, by and through its undersigned counsel, and asks this Court for a declaratory judgment in its favor and against the Law Office of Rachel Zamata, LLC and Citibank, N.A., for the reasons that are set forth below:

## NATURE OF THE CASE

1. The Bar Plan Mutual Insurance Company ("The Bar Plan") seeks a judicial determination of its rights and duties, if any, under a lawyer's professional liability insurance policy that it issued to the Law Office of Rachel Zamata, LLC with the Policy Number 0012954-2018 (LPL-TN-FUL) which has effective dates of 01/04/2018 through 01/04/2019 ("Policy"). *See* **Exhibit 1** attached hereto, Policy.

2. Specifically, The Bar Plan seeks a determination that it owes no duty to defend and/or indemnify Law Office of Rachel Zamata, LLC, against any demands that Citibank, N.A. has made in the suit styled *Citibank, N.A. v Law Office of Rachel Zamata,*

*N.A.*, with the case number 1:18-cv-09973, which is currently pending in the United States District Court for the Southern District of New York., ("Underlying Case").  See **Exhibit 2**, attached hereto, Complaint filed in the Underlying Case.

## PARTIES

3. The Bar Plan is a Missouri insurance company in good standing with its principal place of business located in St. Louis County, Missouri.

4. Law Office of Rachel Zamata, LLC ("Zamata Firm") is a Tennessee limited liability company with its principal place of business located in Nashville, State of Tennessee, and whose sole member is Rachel Zamata, who is a Tennessee licensed lawyer and resident.

5. Citibank, N.A., is a national banking association organized under the law of the United States with a main office as set forth in its articles of association located in Sioux Falls, South Dakota.

## JURISDICTION AND VENUE

6. There is complete diversity of citizenship between Plaintiff and all of the Defendants.

7. The amount in controversy exceeds $75,000, exclusive of interest and costs.

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.

9. This is a declaratory judgment action brought pursuant to 28 U.S.C. § 2201 and Rule 57, FRCP.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## **POLICY**

11. The Zamata Firm is the Policyholder of the Policy.

12. The Policy is a "claims made" policy which provides as follows:

**I.** **DEFINITIONS**  Whenever used in this Policy:

\*\*\*\*

D. "**CLAIM**" means: Receipt by an Insured of a demand for money or services (including the service of suit or the institution of arbitration proceedings) against the Insured from one other than that Insured.

F. "**DAMAGES**" means: A monetary judgment, final arbitration award or settlement, but specifically excludes:

1. Fines, penalties, sanctions, costs, expenses or fees imposed under state or federal laws, regulations, statutes or rules of procedure, punitive or exemplary Damages and Damages which are a multiple of compensatory Damages, including but not limited to, double and treble Damages; provided, however, that Damages do include an award arising under 15 U.S.C. §1692k(a);
2. Restitution, reduction or set off of any monies or other consideration paid to an Insured as fees, costs or expenses, which are to be reimbursed or discharged as part of the judgment, settlement or final arbitration award and injuries that are a consequence of the payment of any monies or other consideration to an Insured as fees, costs or expenses;
3. Fees charged for an Insured's own work or costs, fees or expenses incurred by an Insured in the course of the provision of Legal Services, including, but not limited to, expert witness fees, court costs, and costs and expenses associated with depositions or transcripts, and injuries, economic and otherwise that are a consequence of any of the foregoing;
4. Monies owed by an Insured as a consequence of the Insured being a victim of any dishonest, deliberately fraudulent, criminal, malicious or deliberately wrongful act, unless the Insured owed the claimant a duty of care arising from the Insured's provision of Legal Services on behalf of or for the benefit of that claimant;
5. Any amount for which an Insured is absolved from payment by reason of any covenant, agreement, and/or court order; and
6. Matters deemed uninsurable by law.

\*\*\*\*

3

L.  "**LEGAL SERVICES**" means: Services performed by an Insured in an Insured's professional capacity as:

1. A lawyer;
2. A non-lawyer who is an employee, leased employee or independent contractor of the Policyholder and who works at the direction of and who is under the supervision of the Policyholder and for whose actions the Policyholder is legally responsible;
3. A notary public;
4. A mediator or arbitrator;
5. An administrator, conservator, executor, guardian, trustee, receiver or any similar fiduciary capacity; or
6. A title insurance agent, broker or producer, but only for title work performed as a partner, member, officer, director, stockholder, Associate, or employee of the Policyholder for clients of the Policyholder. Title work performed as an agent, broker or producer of a title agency other than the Policyholder is NOT covered under this Policy.

****

## II.  COVERAGE

### A.  PROFESSIONAL LIABILITY AND CLAIMS-MADE AND REPORTED CLAUSE:

The Company will pay on behalf of an Insured all sums, subject to the Limit(s) of Liability, Exclusions and terms and conditions contained in this Policy, which an Insured shall become legally obligated to pay as Damages as a result of CLAIMS (INCLUDING CLAIMS FOR PERSONAL INJURY) FIRST MADE AGAINST AN INSURED DURING THE POLICY PERIOD OR ANY APPLICABLE EXTENDED REPORTING COVERAGE PERIOD AND REPORTED TO THE COMPANY DURING THE POLICY PERIOD, THE AUTOMATIC EXTENDED CLAIM REPORTING PERIOD, OR ANY APPLICABLE EXTENDED REPORTING COVERAGE PERIOD by reason of any act or omission by an Insured acting in a professional capacity providing Legal Services.
**PROVIDED ALWAYS THAT** such act or omission happens:

1. During the Policy Period; or
2. Prior to the Policy Period, provided that prior to the effective date of this Policy:
   a. Such Insured did not give notice to the Company or any prior insurer of any such act or omission; and
   b. Such Insured had no basis to believe that such Insured had committed such an act or omission.

4

> **NOTE:** It is a condition precedent to coverage under this Policy that all Claims be reported in compliance with Section VII. CLAIMS, Paragraph A.

****

## III. EXCLUSIONS

**THIS POLICY DOES NOT PROVIDE COVERAGE FOR ANY CLAIM BASED UPON OR ARISING OUT OF:**

A. Any dishonest, deliberately fraudulent, criminal, malicious or deliberately wrongful acts or omissions by an Insured; however, the Company will provide a defense for any Claim alleging such acts or omissions by an Insured acting in a professional capacity providing Legal Services, subject to Section II. COVERAGE, Paragraph B. 3., but the Company will not pay any sums the Insured shall become legally obligated to pay as Damages for any such Claim.  This exclusion is waived with respect to each Insured who did not know of, or participate or acquiesce in, the act or omission, but then only to the extent that the act or omission underlying the Claim for Damages does not relate to or arise out of the defalcation by any Insured under this Policy of money or property maintained by the Policyholder or any Insured in trust, escrow, or other safekeeping for the account or benefit of any claimant or other party.  However, under no circumstances will the Company provide a defense for any criminal prosecution.

****

G. The Insured's alleged liability under any oral or written contract or agreement, unless such liability would have attached to the Insured in the absence of such agreement.

****

## VII. CLAIMS

### A. NOTICE OF A CLAIM:

As a condition precedent to the coverage provided by this Policy and subject to the provisions of Section II. COVERAGE, Paragraph D. of this Policy, an Insured shall, within twenty (20) days of the date any Claim is first made against that Insured, give written notice of that Claim to the Company.

In the event suit is brought against an Insured, the Insured shall immediately forward to the Company every demand, notice, summons or other process received directly or by the Insured's representatives.

Notice must be received by the Company prior to the expiration of the Policy Period, the  Automatic Extended Claim Reporting Period, or any

applicable Extended Reporting Coverage by contacting the Claims Department, 1717 Hidden Creek Court, St. Louis, MO 63131 (Email: BarPlanClaims@thebarplan.com). Notice to your agent is not notice to the Company.

**B.   ASSISTANCE AND COOPERATION OF INSUREDS:**

Each Insured shall cooperate with the Company's investigation into coverage for any Claim and with the Company's defense of a Claim. Upon the Company's request, an Insured shall without charge to the Company: (1) provide the Company and/or defense counsel with any documents requested that relate to the Claim, including a full and complete copy of the Insured's legal file from which the Claim stems, (2) meet with Company representatives and/or defense counsel, (3) give written statements to and submit to examination and interrogation by representatives of the Company and/or defense counsel, under oath if required, (4) attend hearings, depositions and trials, (5) assist in effectuating settlement, securing and giving evidence, and obtaining the attendance of witnesses, and (6) assist in the conduct of suits and proceedings in connection with a Claim. The Insured shall exercise the Insured's rights to reject or demand the arbitration of any Claim made against the Insured in accordance with the written instructions of the Company. While the Insured may advise the client as to the status of a matter in compliance with the Insured's ethical obligations, the Insured shall not make any payment, admit any liability, settle any Claims, assume any obligation or incur any expense without the consent of the Company. If the Insured does elect to admit liability, settle a Claim, assume any obligation or incur any expense without the consent of the Company, or fails or refuses to cooperate with the Company as set forth herein, it does so at its own cost and waives coverage for that Claim and any related act or omission.

## **CLAIM**

13.   In the Underlying Case, Citibank alleges that at all relevant times it had an attorney trust bank account open in the name of Law Office of Rachel Zamata, LLC,

14.   In the Underlying Case, Citbank alleges that the Zamata Firm deposited a counterfeit check in its Citibank attorney trust account in the amount of $198,500 on February 12, 2018.

6

15. In the Underlying Case, Citibank alleges that the counterfeit check was issued to the order of Law Office of Rachel Zamata, LLC, was purportedly drawn from the RBC Royal Bank Limited, Cayman Islands, and identified the remitter as RBC Asset Management.

16. In the Underlying Case, Citibank alleges that it provisionally credited the counterfeit check subject to collection.

17. In the Underlying Case, Citibank alleges that on February 26, 2018, the Zamata Firm instructed it to wire $190,000 from its attorney trust account.

18. In the Underlying Case, Citibank alleges that when the RBC Royal Bank Limited, Cayman Islands, did not honor the counterfeit check, the February 26, 2018 wire transfer from the Zamata Firm's attorney trust account resulted in an overdraft of $190,055.

19. In the Underlying Case, Citibank alleges that, on April 24, 2018, it demanded that the Zamata Firm pay it the amount of the overdraft.

20. In the Underlying Case, Citibank alleges that pursuant to written agreement the Zamata Firm agreed to reimburse it for the overdraft and any costs and expenses, including attorney's fees, Citibank incurred collecting on the overdraft.

21. In the Underlying Case, Citibank seeks a judgment against the Zamata Firm that is no less than $190,055 plus costs, disbursements, interest, and expenses, including attorney's fee.

22. Citibank filed the underlying Case on October 29, 2018.

23. Zamata first reported to The Bar Plan that Citibank had demanded money from her related to the overdraft on November 1, 2018.

## COUNT I
### (Declaratory Judgment)

24. The Bar Plan re-alleges and incorporates by reference the allegations set forth in Paragraphs 1-23 above as if fully set out herein.

25. The Policy's insuring clause only covers "sums, subject to the Limit(s) of Liability, Exclusions and terms and conditions contained in this Policy, which an Insured shall become legally obligated to pay as Damages as a result of CLAIMS …by reason of any act or omission by an Insured acting in a professional capacity providing Legal Services."

26. The Policy expressly defines Damages to exclude: "Monies owed by an Insured as a consequence of the Insured being a victim of any dishonest, deliberately fraudulent, criminal, malicious or deliberately wrongful act, unless the Insured owed the claimant a duty of care arising from the Insured's provision of Legal Services on behalf of or for the benefit of that claimant.."

27. The allegation in the Underlying Case is that the Zamata Firm is liable for depositing a counterfeit check that resulted in an overdraft since the check was not honored and putative funds from the check were wire transferred from the Firm's attorney trust account.

28. If the Zamata Firm did not know the check was counterfeit, there is no indemnity and/or defense coverage for the Underlying Case under the Policy's insuring clause, because the Underlying Case does not constitute a covered Claim for Damages by reason of an insured providing Legal Services on behalf of or for the benefit of the claimant.

29. If the Zamata Firm knew the Check was counterfeit, then Exclusion A precludes indemnity coverage for the Underlying Case, because depositing a counterfeit check would constitute deliberate wrongdoing.

30. There is no coverage for the Underlying Case, because the Zamata Firm did not report the April 24, 2018 demand by Citibank within 20 days of first receiving it, which prejudiced The Bar Plan and was a violation of both the notice requirement of the Policy set forth in Section VII(A) and the Zamata Firm's duty to cooperate set forth in Section VII(B).

31. Exclusion G precludes indemnity coverage for Citibank's claim for its own attorney's fees in collecting on the overdraft, because such damages are contractual in nature.

WHEREFORE, The Bar Plan Mutual Insurance Company prays for declaratory relief as follows:

1. That it owes no duty to defend and/or indemnify the Zamata Firm in the Underlying Case under the Policy's insuring clause and/or Section VII;

2. That it owes no duty to indemnify the Zamata Firm in the Underlying Case under Exclusion A;

3. That it owes no duty to indemnity the Zamata Firm for any judgment entered in the Underlying Case for Citibank's attorney's fee damages claim as Exclusion G precludes indemnity coverage for said claim;

4. That The Bar Plan be awarded its attorneys' fees and costs of suit incurred herein; and

9

5. That the Court award such other and further relief it deems just and proper under the circumstances.

        Respectfully submitted,

        LEWIS, THOMASON, KING, KRIEG & WALDROP, P.C.

        */s/ Jason M. Pannu*
        Jason M. Pannu, B.P.R. No. 023816
        424 Church Street, Suite 2500
        P.O. Box 198615
        Nashville, TN 37219
        (615) 259-1369
        (615) 259-1389 (fax)
        jpannu@lewisthomason.com

        **Attorney for Plaintiff**